FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Jul 13, 2020**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA C.,[1] | No.    4:19-CV-5199-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |
| ANDREW M. SAUL, the Commissioner of Social Security, | |
| Defendant. | |

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Maria C. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) improperly determining that Plaintiff did not have a severe physical impairment; 3) discounting Plaintiff's symptom reports; and 4) improperly crafting

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 10 & 11.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Plaintiff's residual functional capacity and therefore erring at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 10, and grants the Commissioner's Motion for Summary Judgment, ECF No. 11.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are

denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

3

4

5

6

7

Step three compares the claimant's impairment(s) to several recognized by

the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an

impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.[11] If an impairment does not, the disability-

evaluation proceeds to step four.

8

9

10

11

12

Step four assesses whether an impairment prevents the claimant from

performing work she performed in the past by determining the claimant's residual

functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits

are denied.[13] If the claimant cannot perform prior work, the disability-evaluation

proceeds to step five.

13

14

15

Step five, assesses whether the claimant can perform other substantial

gainful work—work that exists in significant numbers in the national economy—

16

17

18

19

20

21

22

23

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of December 13, 2011.[18] Her claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Marie Palachuk.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements on September 30, 2016;

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 83.

[19] AR 91 & 104.

[20] AR 48-80.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had not engaged in substantial gainful activity since December 13, 2011, the alleged onset date, through her date last insured of September 30, 2016;

- Step two: Plaintiff had the following medically determinable severe impairments: atopic dermatitis, mild obesity, and mild depression;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > [A]void contact with formaldehyde; due to drowsiness from medication, [Plaintiff] must avoid all hazards including production line work, dangerous moving machinery, commercial driving and unprotected heights; no climbing of ladders, ropes or scaffolds. [Plaintiff] is able to understand, remember and carryout simple, routine and repetitive tasks/instructions; is able to maintain attention and concentration on those types of tasks for two hour intervals between regularly scheduled breaks throughout an eight-hour workday; needs a predictable environment with seldom changes; no more than simple judgment or decision-making; and no fast-paced production rate of work.

- Step four: Plaintiff could perform past relevant work as a sales attendant, store cashier, and laundry laborer.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 23-35.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- significant weight to the opinions of testifying experts Lynne Jahnke, M.D. and Ellen Rozenfeld, Psy.D., the DDS physical medical consultants, Richard Herdener, M.D., John Hackett, M.D., and C. Dan Henderson, M.D.; and

- little weight to the opinions of Peresi Kahirimbanyi, M.D. and Ronald Early, Ph.D.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere

---

[22] AR 30 & 32.

[23] AR 1.

[24] 42 U.S.C. § 405(g).

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

3

4

5

6

7

8

9

10

11

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record as a whole.[28]

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

12

13

14

15

16

17

18

19

20

21

22

23

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[29] *Molina*, 674 F.3d at 1111.

[30] *Id.* at 1115 (quotation and citation omitted).

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# IV.    Analysis

## A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff challenges the ALJ's assignment of significant weight to Dr. Jahnke's opinion and little weight to Dr. Early's and Dr. Kahirimbanyi's opinions.

### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[32] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[33]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[34] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by

---

[32] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[33] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[34] *Lester*, 81 F.3d at 830.

substantial evidence, and the opinion of an "other" medical source[35] may be rejected for specific and germane reasons supported by substantial evidence.[36] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[37]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

2.    Dr. Lynne Jahnke

Dr. Jahnke testified as a physical medical expert at Plaintiff's hearing on February 13, 2018. After reviewing the medical record, Dr. Jahnke opined Plaintiff suffered from the severe impairments of atopic dermatitis and mild obesity and concluded Plaintiff's low back pain, flatfeet, and right ankle fracture were non-severe and produced no more than minimal limitation in Plaintiff's ability to perform basic

---

[35] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[36] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

work activities.[38] Dr. Jahnke also opined Plaintiff had the residual functional capacity to perform at all exertional levels except Plaintiff should avoid hazardous machinery, unprotected heights, and climbing of ladders, ropes, and scaffolds due to drowsiness from Plaintiff's medications.[39]

The ALJ gave great weight to Dr. Jahnke's opinion because 1) she reviewed the entire medical record and 2) it is supported by other examination findings in the record.[40]

Plaintiff argues Dr. Jahnke's opinion was inconsistent and should not have been assigned greater weight than those who treated Plaintiff.[41] Defendant argues an ALJ only needs to provide specific and legitimate reasons if she chooses to reject an opinion.[42] An ALJ may credit the opinion of a non-examining expert who testifies at hearing and is subject to cross-examination.[43] The opinion of a non-examining

---

[38] AR 53-55.

[39] AR 55-56.

[40] AR 32.

[41] ECF No. 10 at 12-14.

[42] ECF No. 11 at 15.

[43] *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.[44]

First, an ALJ may give more weight to an opinion that is based on more records reviewed and supporting evidence.[45] Here, Dr. Jahnke reviewed the entire medical record. That Dr. Jahnke was more familiar with Plaintiff's longitudinal case record was a legitimate and specific reason to give more weight to Dr. Jahnke's opinion than the opinions of Dr. Early and Dr. Kahirimbanyi.

Second, the ALJ's finding that Dr. Jahnke's opinion was consistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[46] The ALJ cited to medical records and observations that

---

[44] *Andrews*, 53 F.3d at 1041.

[45] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

[46] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

showed satisfactory disc space and alignment and no spondylolisthesis, lichenified patches with no weeping or signs of secondary infection, and normal mood and affect.[47] That the longitudinal medical record was consistent with Dr. Jahnke's

---

[47] *See* AR 321 (allergic contact dermatitis likely secondary to exposure to formaldehyde; permanent allergy to formaldehyde; and recommend continue topical corticosteroids as well as avoidance measures); AR 332 ("There are no restrictions to her ability to work as a result of an occupational exposure."); AR 385, 389, & 393 (tenderness along entire spine and paraspinous muscles with worse symptoms in the lumbar area, muscle strength normal); AR 386 (Thoracolumbar spine exam findings: "The vertebral axial heights and intervertebral disc spaces satisfactory. The vertebral alignments are satisfactory. There is no spondylolisthesis."); AR 437, 442-43, 452, 454, 457, & 515 (lichenified patches on distal arms and proximal forearms, dorsal to lateral, no weeping, no signs of secondary infection); AR 486 ("Review of systems is essentially unremarkable other than the skim complaints."); AR 487-89 (Physical examination revealed "erythema and lichenification of the antecubital fossae and adjacent extensor skin around the elbow with some hyperpigmentation. No involvement of the popliteal fossa is noted today, as opposed to the findings of two years ago." There does not appear to be a permanent impairment, Plaintiff capable of working as of this moment without restrictions or medications related to 2001 exposure.).

1    opinion was a specific and legitimate reason supported by substantial evidence to

2    credit the opinion.

3        3.    Dr. Ronald Early

4        On November 22, 2016, Dr. Early performed a psychological evaluation of

5    Plaintiff.[48] Dr. Early diagnosed Plaintiff with Unspecified Depressive Disorder and

6    Unspecified Anxiety Disorder, both causally related to the industrial injury exposure

7    and sequelae on a more probable basis than not.[49]

8        The ALJ discounted Dr. Early's opinion because 1) the check-box form

9    contained almost no explanation that would support the degree of limitation opined;

10   2) it was inconsistent with Plaintiff consistently denying psychological symptoms to

11   treating providers[50]; 3) it was inconsistent with the benign mental findings; 4) it was

12   inconsistent with Dr. Rozenfeld's testimony; and 5) his examination took place after

13   the date last insured.

14

15   _____

16   [48] AR 543-53.

17   [49] AR 551.

18   [50] Plaintiff does not challenge this reason the ALJ cited in support of discounting Dr.

19   Early's opinion, thus the Court could decline to review it. *See Carmichkle v. Comm'r*

20   *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, upon review, the

21   Court finds that the ALJ provided specific, clear, and convincing reason, supported

22   by substantial evidence, to support her findings.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[51] However, if treatment notes are consistent with the opinion, a check-box report may not automatically be rejected.[52] Here, on the date of Plaintiff's evaluation, Dr. Early filled out a check-box form and completed a report. The check-box form included opined mild to marked limitations and provided a brief explanation of Dr. Early's opinion. Dr. Early's report included a summary of the documents reviewed, Plaintiff's interview, and the mental status examination, along with a summary and conclusion of Dr. Early's findings. Because Dr. Early's check-box opinion is consistent with his report, the ALJ erred in discounting Dr. Early's opinion because his check-box opinion was not explained. However, this error is harmless because, as explained below, the ALJ provided additional reasons for discounting Dr. Early's opinion that were specific, legitimate, and supported by substantial evidence.

The ALJ's decision to discount Dr. Early's opinion because it was inconsistent with the longitudinal medical record is a rational finding supported by substantial evidence. [53] The ALJ cited to medical records and observations that

---

[51] *Garrison*, 759 F.3d at 1014 n.17.

[52] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[53] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

showed unremarkable status examinations with normal mood and affect; normal orientation to person, place, and time; intact judgement and insight; intact recent and remote memory; and no work restrictions except avoiding chemicals or work environments that might exacerbate Plaintiff's dermatitis.[54] That the longitudinal medical record was inconsistent with Dr. Early's opinion was a specific and legitimate reason to discount the opinion.

Next, the ALJ's finding that Dr. Early's more-limiting opinion was inconsistent with Dr. Rozenfeld's medical opinion is rational and supported by substantial evidence. Dr. Rozenfeld opined Plaintiff's mental impairments produced mild limitations in understanding, remembering, or applying information, and interacting with others and moderate limitations in concentrating, persisting, or maintaining pace, and adapting or managing oneself.[55] Dr. Rozenfeld also opined Plaintiff retained the mental residual functional capacity to understand, remember and carryout simple, routine, and repetitive tasks and was able to maintain attention and concentration on those

---

quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole; *Orn*, 495 F.3d at 631 (same).

[54] *See* AR 406, 410, 626, & 631 (judgment and insight normal; orientation to person, place, and time, normal; mood and affect normal); AR 486 ("Review of systems is essentially unremarkable other than the skim complaints."); & AR 511.

[55] AR 59.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

types of tasks for two-hour intervals between regularly scheduled breaks throughout an eight-hour workday; needs a predictable environment with seldom changes; is capable of simple judgment or decision-making; and no fast-paced production rate work.[56] In light of Dr. Rozenfeld's opinion, that Dr. Early's more-limiting opinion was inconsistent with the other medical opinion was a specific and legitimate reason to discount Dr. Early's opinion.

Lastly, evidence from outside the relevant period in a case is of limited relevance.[57] Dr. Early's evaluation occurred a couple of months after the date last insured.[58] Plaintiff argues that because Dr. Early's evaluation included him reviewing records dating back to 2001 and included opinions related to the relevant

---

[56] AR 59-60.

[57] *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th 2008); *see also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time, and reliance on more recent opinions); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion).

[58] AR 543-53.

time period, it should have been given more weight.[59] Because Dr. Early reviewed medical evidence during the relevant time period and rendered an opinion retrospectively, Dr. Early's evaluation should not be disregarded solely on the basis it was rendered after the period for disability.[60] However, any error is harmless because the ALJ provided additional reasons for discounting Dr. Early's opinion that were specific, legitimate, and supported by substantial evidence.

Plaintiff fails to establish that the ALJ erred by discounting Dr. Early's opinion.

### 4.    Dr. Peresi Kahirimbanyi

Dr. Kahirimbanyi began treating Plaintiff in 2014.[61] On January 11, 2018, Dr. Kahirimbanyi completed a medical form.[62] Dr. Kahirimbanyi diagnosed Plaintiff with lower back pain with degenerative disc disorder, pruritus, and major depressive disorder. Dr. Kahirimbanyi opined Plaintiff's low back condition had been present since 2014 and her skin condition had been present since 2001.[63] Dr.

---

[59] ECF No. 10 at 14-15.

[60] *See Smith v. Bowen*, 849 F.2d 1222, (9th Cir. 1988) (finding reports containing observations made after the period for disability are relevant to assess the claimant's disability).

[61] AR 223.

[62] AR 604-05.

[63] AR 604.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Kahirimbanyi opined that Plaintiff could sit less than two hours a day, stand/walk less than two hours a day, and lift no more than 10 pounds in a work setting. Dr. Kahirimbanyi also opined Plaintiff would require unscheduled breaks every 20-30 minutes and would miss more than 4 days of work per month.[64]

The ALJ discounted Dr. Kahirimbanyi's opinion because 1) it is contradicted by other physical opinions in the record; 2) it conflicts with benign examination findings; and 3) the assessment was dated two years after the date last insured.

First, the ALJ's finding that Dr. Kahirimbanyi's more-limiting opinion was inconsistent with the other physical medical opinions is rational and supported by substantial evidence. Dr. Herdener, a dermatologist, performed a physical examination of Plaintiff and diagnosed her with chronic dermatitis likely secondary to exposure to formaldehyde and opined restrictions from contact with formaldehyde in an employment situation.[65] Similarly, Dr. Henderson performed a physical examination of Plaintiff and found lichenification and hyperpigmentation on Plaintiff's bilateral dorsal forearms and arms but no weeping or signs of secondary infection and opined work restriction to include avoiding chemicals or work environments that might exacerbate her dermatitis.[66] In light of these other opinions, that Dr. Kahirimbanyi's more-limiting opinion was inconsistent with the

---

[64] AR 604-05.

[65] AR 319-23.

[66] AR 442-43, 438, & 511, & 518.

1  other medical opinions was a specific and legitimate reason supported by

2  substantial evidence to discount Dr. Kahirimbanyi's opinion.

3      In addition, the ALJ's decision to discount Dr. Kahirimbanyi's opinion

4  because it was internally inconsistent with the longitudinal medical record is a

5  rational finding supported by substantial evidence. [67] The ALJ again cited to

6  medical records and observations that showed satisfactory disc space and

7  alignment and no spondylolisthesis, lichenified patches with no weeping or signs of

8  secondary infection, and normal mood and affect.[68] The ALJ rationally found that

9  the longitudinal medical record was inconsistent with Dr. Kahirimbanyi's opinion.

---

[67] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is

evaluated as to the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole; *Orn*, 495 F.3d at 631 (same).

[68] *See* AR 321 (allergic contact dermatitis likely secondary to exposure to

formaldehyde; permanent allergy to formaldehyde; and recommend continue topical

corticosteroids as well as avoidance measures); AR 385, 389, & 393 (tenderness along

entire spine and paraspinous muscles with worse symptoms in the lumbar area,

muscle strength normal); AR 386 & 428 (Thoracolumbar spine exam findings: "The

vertebral axial heights and intervertebral disc spaces satisfactory. The vertebral

alignments are satisfactory. There is no spondylolisthesis.); AR 408 ("All labs

including CBC, CMP, TSH, FSH were essentially normal except for very low vitamin

1

2

Lastly, evidence from outside the relevant period in a case is of limited

relevance.[69] Dr. Kahirimbanyi's assessment occurred two years after the date last

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

D."); AR 406 & 410 (judgment and insight normal; orientation to person, place, and time, normal; mood and affect normal); AR 437, 442-43, 452, 454, 457, & 515 (lichenified patches on distal arms and proximal forearms, dorsal to lateral, no weeping, no signs of secondary infection); AR 486 ("Review of systems is essentially unremarkable other than the skim complaints.") AR 487-89 (Physical examination revealed "erythema and lichenification of the antecubital fossae and adjacent extensor skin around the elbow with some hyperpigmentation. No involvement of the popliteal fossa is noted today, as opposed to the findings of two years ago." There does not appear to be a permanent impairment, Plaintiff capable of working as of this moment without restrictions or medications related to 2001 exposure.).

[69] *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th 2008); *see also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time, and reliance on more recent opinions); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion).

insured.[70] Plaintiff argues because the assessment referenced Dr. Kahirimbanyi's opinions and limitations from the relevant time period and were supported by Dr. Kahirimbanyi's notes, it should have been given more weight.[71] However, as previously explained the assessment was inconsistent with other substantial evidence and physical medical opinions, thus the ALJ's decision to discount Dr. Kahirimbanyi's opinion is upheld on this record.

Plaintiff fails to establish that the ALJ erred by discounting Dr. Kahirimbanyi's opinion.

**B.    Step Two (Severe Impairment): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred at step two by failing to identify degenerative disc disease as a severe impairment.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[72] To show a severe mental impairment, the claimant must first prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory

---

[70] AR 604-05.

[71] ECF No. 10 at 15.

[72] 20 C.F.R. § 416.920(c).

findings.[73] If a mental impairment is proven, the ALJ then considers whether the medically determinable impairment is severe or not severe. A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[74] Basic mental work abilities include understanding, carrying out, and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations.[75]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[76] "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly establishes that [Plaintiff] did not have a medically severe impairment or combination of impairments."[77]

At step two, the ALJ concluded that Plaintiff has the severe impairments of atopic dermatitis, mild obesity, and mild depression. After discussing the medical

---

[73] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

[74] SSR 85-28 at *3.

[75] 20 C.F.R. § 416.921.

[76] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[77] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

opinions and detailing the medical evidence pertaining to Plaintiff's low back pain, the ALJ found Plaintiff's low backpain was not a severe impairment.[78] Plaintiff argues her degenerative disc disease caused more than a minimal effect on her ability to do basic work activities, citing to a motor vehicle accident in 2014, an MRI performed in August 2016, and Dr. Kahirimbanyi's opinion.[79]

Here, the ALJ's finding that Plaintiff's low backpain was not a severe impairment is a rational interpretation of the record.[80] The ALJ considered the cervical, thoracic, and lumbar x-rays Plaintiff underwent in 2015, which were negative.[81] The ALJ also considered Plaintiff's low backpain examinations, which indicated no decrease in range of motion, rare demonstrations of tenderness, a normal gait and station, normal strength, normal reflexes, negative straight leg raises, and normal sensations.[82] Lastly, the ALJ considered that, while an MRI scan in August 2016 showed a lumbar impairment for the first time, it was conducted only one month before the date last insured and that Dr. Jahnke opined, after reviewing the medical record, Plaintiff's low back condition was not a severe

---

[78] AR 27.

[79] ECF No. 10 at 10.

[80] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[81] AR 27 (citing AR 381 & 538).

[82] AR 27 (citing AR 363, 389, 575, & 788); *see also* AR 636.

impairment. Moreover, as previously explained, the ALJ properly discounted Dr. Kahirimbanyi's opinion.

Furthermore, any error at step two is harmless because the ALJ resolved step two in Plaintiff's favor by finding severe impairments and continued the sequential analysis through step four considering all of Plaintiff's symptoms that were supported by the record.

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[83] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[84] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

---

[83] *Molina*, 674 F.3d at 1112.

[84] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

1
2

symptoms inconsistent with the objective medical evidence and other evidence in the record.[85]

3
4
5
6

Plaintiff argues that even if Plaintiff's statements were inconsistent with the record, the ALJ's finding is not supported by the record. Specifically, Plaintiff argues that Plaintiff's testimony regarding the intensity and persistency of her drowsiness is not contradicted by the longitudinal record.

7
8
9
10

As to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[86] However, objective medical evidence is a relevant factor in considering

11
12
13

---

14

[85] AR 30.

15
16
17

[86] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. §§ 404.1502(f), 416.902(k). In turn, "signs" is defined as:

18
19
20
21
22

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

*Id.* §§ 404.1502(g), 416.902(l).

23

the severity of the reported symptoms. [87] As discussed above, the records and observations showed unremarkable status examinations with normal mood and affect; normal orientation to person, place, and time; intact judgement and insight; intact recent and remote memory; no work restrictions except avoiding chemicals or work environments that might exacerbate her dermatitis and hazardous machinery due to drowsiness; satisfactory disc space and alignment and no spondylolisthesis; and lichenified patches with no weeping or signs of secondary infection, in contrast to Plaintiff's reported disabling symptoms. This was a relevant factor for the ALJ to consider.

An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements. [88] The ALJ noted that Plaintiff reported that she could walk only 15 minutes due to her leg/back pain, but consistently denied any difficulty walking to treating providers and reported her back pain was "doing better."[89] The ALJ also noted that Plaintiff reported debilitating depression and anxiety symptoms, but the mental status examinations and treatment notes

[87] *Id.*

[88] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[89] AR 353, 364, 366, 369, 371, & 394.

consistently showed Plaintiff alert and oriented, cooperative attitude, normal mood and affect, normal attention span, normal concentration, normal recent and remote memory, and normal insight and judgment and when depression was reported, Plaintiff reported improvement with depression shortly after.[90]

The ALJ also accounted for the medical opinion evidence when weighing Plaintiff's symptom reports. The ALJ discussed the opinions of Dr. Henderson and Dr. Jahnke when assessing Plaintiff's reports of drowsiness. Dr. Henderson opined Plaintiff was unable to perform the job of potato sorter because of the drowsiness from Plaintiff's dermatitis medication.[91] As previously explained, Dr. Jahnke opined Plaintiff should avoid hazardous machinery due to drowsiness from her medications.[92] In short, the medical opinions did not support Plaintiff's subjective claim that she cannot engage in work within the limitations of the RFC due to drowsiness.[93]

---

[90] AR 383, 406, 410, 414, 454, 575, 636, & 639.

[91] AR 482.

[92] AR 55.

[93] *Roberts v. Colvin*, No. 2:12-cv-014656-JO, 2015 WL 5819092, at *4 (D. Or. Oct. 29, 2015) (upholding the ALJ assessing the medical opinion evidence of agency reviewing experts when discounting the plaintiff's reported symptoms).

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her activities of daily living.[94] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[95] The ALJ highlighted that Plaintiff reported exercising on a regular basis.[96] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. This cited activity, which can be achieved in relatively short periods of time and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[97]

Because the ALJ articulated other supported grounds for discounting Plaintiff's reported symptoms, the ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record.

In summary, Plaintiff fails to establish the ALJ consequently erred by discounting Plaintiff's symptom reports.

---

[94] AR 24.

[95] *Molina*, 674 F.3d at 1113.

[96] AR 32 (citing 353).

[97] *Molina*, 674 F.3d at 1112-13.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by her providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[98]

**V.    Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 13th  day of July 2020.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

---

[98] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).